UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


MICHAEL JAMES,                    :
                                  :    NO. 1:03-CV-00480
        Plaintiff,                :
                                  :    **OPINION AND ORDER**
                                  :
    v.                            :
                                  :
                                  :
ABX AIR, INC.,                    :
                                  :
        Defendant.

        This matter is before the Court on the Defendant's Motion
for Summary Judgment (doc. 33), the Plaintiff's Memorandum in
Opposition to Defendant's Motion for Summary Judgment (doc. 36),
and the Defendant's Reply Memorandum in Support of its Motion for
Summary Judgment (doc. 39).  The Plaintiff, Michael James, filed
his Complaint in this matter on July 7, 2003, alleging disparate
treatment race discrimination and hostile work environment in
violation of Title VII of the Civil Rights Act of 1964 as amended,
42 U.S.C. § 2000, et seq., in violation of 42 U.S.C. § 1981, and in
violation of Ohio Revised Code § 4112; unlawful retaliation in
violation of Title VII of the Civil Rights Act of 1964 as amended,
42 U.S.C. § 2000, et seq. and Ohio R.C. § 4112; disability
discrimination in violation of Ohio Revised Code § 4112; and
violation of Ohio Public Policy (doc. 1).  The Defendant, ABX Air,
Inc., answered James' Complaint on September 8, 2003 (doc. 2) and,
after a sufficient period of discovery, filed a Motion for Summary

Judgment (doc. 33).  ABX Air has also filed a Motion to Strike the Plaintiff's Affidavit (doc. 38).  Because the Court determines that adequate evidence exists elsewhere to rule on the motion for summary judgment, the Court declines to rule on the Motion to Strike.

**FACTS**

James was hired by ABX Air as a full time Modification Technician in January 1991 (doc. 33).  Prior to that, since 1989 James had worked at ABX Air's Wilmington facility as an outside contractor (Id.).  While working as a Modification Technician, James, an African American, was denied access to test equipment, while other white employees were permitted to use such equipment (doc. 36).  When no lead supervisor was available, white employees with less seniority than James were put in charge (Id.).  In 1992 James moved to second shift Line Maintenance Division, where he spent most of his time with ABX Air (Id.).  James' performance reviews indicate that his supervisors approved of the quality of his work on the line (doc. 33).  From February 1992 until April 2001, however, James received numerous warnings, both written and verbal, about attendance and absenteeism issues, from various supervisors (Id.).

While working on the Line Maintenance Division, James was given difficult jobs such as running wire from the front of a plane to the tail.  White employees were often given easier jobs, such as

2

repairing cockpit communications systems (doc. 36). James was written up by supervisors for making minor mistakes, while white employees did not receive written warnings for similar mistakes (Id.). James was not permitted to take days off in conjunction with weekends and was given letters of reprimand for so doing, while white employees were not given similar reprimands for taking days off in conjunction with weekends (Id.). James was frequently publically criticized and disciplined for wearing non-uniform attire, while employees of other races were not (Id.). Some of James' coworkers observed this disparity (Id.). Some of James' coworkers also heard and observed supervisors treating James differently than white employees. These incidents included a supervisor calling James a "fat fucking nigger" after James objected to being criticized for wearing non-uniform shorts, (Id.) and supervisors attempting to catch James specifically violating company policies while not doing the same to white employees (Id.). James was also counseled privately by three or four supervisors at a time, while white employees were not (Id.). Additionally, there is extensive deposition testimony from other African-American employees at ABX Air detailing instances of racial harassment not specifically related to Mr. James (Id.).

In November 2001 James was involved in a dispute with two supervisors over an unscheduled break. Employees at ABX Air were traditionally given flexibility over when to take their break based

3

on whether the line was slow or whether a job kept them working past normal break time (Id.). James was taking an unscheduled break with his lead's knowledge, when two supervisors confronted him about taking this unscheduled break (Id., doc. 33). James attempted to explain that he had his lead's permission, but the supervisors would not accept the explanation (doc. 36). As a result, James was given a written letter of warning (Id., doc. 33). James appealed this warning pursuant to ABX policy (docs. 33, 36), requesting both that the letter of warning be removed from his file and that upper management investigate why he had received a letter of warning while white workers taking unscheduled breaks had not received similar letters (doc. 36). The letter was ultimately removed from James' file because one of the supervisors who gave him the letter had failed to counsel James about prior unscheduled breaks, even though he had indicated in James' file that he in fact had counseled James (Id.). James did not receive a response as to his request for an investigation into different treatment for white workers (Id.).

In March 2002, James temporarily transferred to the first shift so that he could participate in specialized training (doc. 33). On several occasions James nodded off or slept during training, sometimes for hours at a time (Id.). Then, on a day where James' supervisor was not present, James said to numerous co-workers that he planned to "get a god nap in" that day because his

4

supervisor was not present (Id.).  ABX investigated the issue of
James' sleeping during training, and on April 8, 2002 ABX
terminated James' employment (Id.).    James appealed this
termination decision through ABX's Complaint Resolution Policy all
the way up to ABX's Vice President of Administration, who upheld
the termination decision in August 2002 (Id.).

After he was terminated, James went to a doctor for his
sleepiness (doc. 36).  He was preliminarily diagnosed with sleep
apnea (Id.).  James faxed this diagnosis to ABX officials (Id.).
ABX declined to extend him an offer to return to work (Id.).

James properly filed charges with the Ohio Civil Rights
Commission and the Equal Employment Opportunity Commission within
180 days of the final decision upholding his termination (doc. 1).
James has exhausted his administrative remedies and the EEOC issued
a right to sue letter (Id.).  Within 90 days of that issuance,
James initiated this action.

**APPLICABLE LEGAL STANDARD**

Although a grant of summary judgment is not a substitute
for trial, it is appropriate "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56; see also, e.g.,
Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962);

5

LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir.

6

1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

7

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

8

**ANALYSIS**

**A. James' Claim of Disparate Treatment Race Discrimination Under Title VII, § 1981, and Ohio R.C. § 4112**

In cases alleging workplace discrimination with no direct evidence, courts apply the formula set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under the <u>McDonnell Douglas</u> formula, to establish a <u>prima</u> <u>facie</u> case of disparate treatment race discrimination, a plaintiff must prove that 1) the plaintiff is a member of a protected class; 2) the plaintiff was qualified for the job and performed it satisfactorily; 3) despite the plaintiff's qualifications and performance, he suffered an adverse employment action; and 4) the plaintiff was either replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class. <u>Hoskins v. Oakland County Sherrif's Dept.</u>, 227 F.3d 719 (6th Cir. 2000) (<u>citing</u> <u>McDonnell Douglas</u>, 411 U.S. at 802).

If the plaintiff can establish a <u>prima</u> <u>facie</u> case, the burden then shifts to the defendant to establish that there was a legitimate and nondiscriminatory reason for the discharge. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). If the defendant satisfies this requirement, then the burden shifts back to the plaintiff to prove that the defendant's nondiscriminatory justifications are a mere pretext, and that racial considerations were the true reason for the adverse

9

employment action. Id. at 256. The McDonnell Douglas/Burdine burden shifting approach is applicable to claims under § 1981 and Ohio R.C. § 4112 as well as claims under Title VII, see Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992), and thus the plaintiff's claims under these statutes will be analyzed together.

ABX Air argues that James cannot establish a prima facie case as a matter of law because James fails to satisfy the fourth or "similarly situated" prong of the McDonnell Douglas formula. In order to be "similarly situated," the individuals with whom the plaintiff seeks to be compared must be similarly situated in all respects; they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583.

The parties differ greatly over whether any employees exist that are similarly situated to James and have been treated more favorably than James has. Both ABX and James introduce deposition testimony tending to prove their position (docs. 33, 36). This indicates to the Court that genuine issues of fact exist as to this material element of the prima facie case.

Assuming but not deciding that James has established a prima facie case, ABX Air has articulated a legitimate, nondiscriminatory rationale for terminating James' employment,

10

namely, sleeping on the job.  The Sixth Circuit, in multiple unpublished opinions, has made it clear that sleeping on the job is a legitimate, nondiscriminatory ground for terminating an employee's employment when an employer has a clearly established policy against sleeping.  See <u>Bowie v. Advanced Ceramics Corp</u>., 72 Fed.Appx. 258 (6th Cir. 2003) (unpublished); <u>Cartwright v. Lockheed Martin Utility Services, Inc.</u>, 40 Fed.Appx. 147 (6th Cir. 2002) (unpublished); <u>Gant v. University of Michigan Medical Center</u>, 21 Fed.Appx. 435 (6th Cir. 2001) (unpublished).  ABX had such a policy (doc. 33), and thus had a legitimate reason for terminating James' employment.

The burden now shifts back to James to prove that ABX's proffered reason is mere pretext.  <u>Burdine</u>, 450 U.S. at 256.  A plaintiff may show pretext in one of three ways.  First, the plaintiff can show that the defendant's proffered reason had no basis in fact.  Second, the plaintiff can show that the proffered reason did not actually motivate the discharge.  Third, the plaintiff can show that the proffered reason was insufficient to motivate the discharge.  <u>Kline v. Tennessee Valley Authority</u>, 128 F.3d 337, 346 (6th Cir. 1997) <u>citing</u> <u>Manzer v. Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078 (6th Cir. 1994).

The first type of showing is readily identifiable and consists of a plaintiff proving that the reasons for the termination are factually false and never happened.  <u>Manzer</u>, 29

11

F.3d at 1084.  The third type of showing is also readily identifiable and is usually satisfied by a showing that other employees were not terminated for engaging in substantially the same conduct.  Both the first and third ways of showing pretext are direct attacks on the credibility of the defendant's proffered reason for the adverse employment action.  <u>Id</u>

James has not even attempted to show that ABX's proffered reason had no basis in fact, because he admits to having nodded off or slept on the job (doc. 36).  James also does not dispute that he openly said he planned to "get a good nap in" on a day that his supervisor was not present (doc. 33).  Additionally, James cannot show that ABX's proffered reason was insufficient to motivate his discharge.  ABX company policies clearly indicated that sleeping on the job was a ground for termination (<u>Id</u>.).  James was given a copy of this policy when he began working for ABX (<u>Id</u>.), and was aware of the policy.  James, in his Memorandum in Opposition, briefly identifies two individuals who he says were found asleep in a line truck who were not terminated (doc. 36).  James argues that the circumstances in which these employees were found manifested an "intent to sleep" (<u>Id</u>.).  James further argues that since these two employees were not terminated, this proves that ABX's rationale to terminate James, "intentional sleeping," was pretext.  This is insufficient to avoid summary judgment.  While James' argument may raise a slight doubt, the non-movant must do more than raise such

12

a "metaphysical doubt" or "scintilla of evidence." <u>See</u> <u>Celotex</u>,
477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 252.  Rather, James must
present "significant probative evidence" of a genuine issue of
material fact.  <u>Celotex</u>, 477 U.S. at 324.  James cannot prove
pretext by either the first or the third method outlined in <u>Kline</u>.

The second method of showing pretext is an indirect
attack on the defendant's proffered reason, and involves a
different analysis.  There, the plaintiff admits both the factual
basis for the proffered reason and that such conduct could motivate
discharge.  <u>Manzer</u>, 29 F.3d at 1084.  Instead of directly
challenging the defendant's proffered reason, the plaintiff
attempts to show "circumstances which tend to prove that an illegal
motivation was <u>more</u> likely than that offered by the defendant.  In
other words, the plaintiff argues that the sheer weight of the
circumstantial evidence of discrimination makes it more likely than
not that the employer's explanation is a pretext, or coverup." <u>Id</u>.
(<u>emphasis in original</u>) (<u>internal quotation marks omitted</u>).  A
plaintiff may not rest solely on his or her <u>prima</u> <u>facie</u> showing to
demonstrate pretext in this way.  <u>Id</u>.  Allowing the <u>prima</u> <u>facie</u>
showing to also constitute a showing of pretext would allow too
many unsupported claims to survive summary judgment and would make
the <u>McDonnell Douglas</u> burden shifting analysis "illusory." <u>Id</u>.
Consequently, "in order to make this type of rebuttal showing, the
plaintiff may not rely simply upon his <u>prima</u> <u>facie</u> evidence but

must, instead, introduce additional evidence of [] discrimination." Id.

James' Memorandum In Opposition completely fails to satisfy this standard. James must show that the proffered reason did not actually motivate the discharge. In support of such an argument, however, James only states "Airborne's history of tolerating racism and discrimination on the basis of race is evidence from which it can be inferred that Airborne tolerated the discriminatory manner in which James was fired" (doc. 36). There is no evidence in the record supporting this allegation. This statement, standing alone, is completely insufficient to prove that ABX's proffered reason for terminating him did not actually motivate his discharge. Since James cannot rebut ABX's legitimate, non-discriminatory reason for terminating his employment through any of the three methods of showing pretext, this Court finds that summary judgment is appropriate for ABX on James' disparate treatment race discrimination claims.

**B. James' Claim of Retaliation Under Title VII and Ohio R.C. § 4112.**

ABX Air has moved for summary judgment on James' retaliation claim on the basis that James cannot establish a prima facie case of retaliation. In order to establish a prima facie case of retaliation under Title VII and Ohio R.C. § 4112, a plaintiff must prove that 1) they engaged in protected activity; 2) the defendant knew of the plaintiff engaging in protected activity;

14

3) the plaintiff suffered an adverse employment action; and 4) a causal link existed between the protected activity and the adverse employment action. See <u>Weigel v. Baptist Hosp. Of East Tennessee</u>, 302 F.3d 367, 381 (6th Cir. 2002). If the plaintiff can establish a <u>prima</u> <u>facie</u> case of retaliation, the burden then shifts to the defendant to articulate a nondiscriminatory reason for the discharge. <u>Burdine</u>, 450 U.S. at 254. If the defendant is able to articulate such a reason, the plaintiff then has the burden of showing that the proffered reason is pretext. <u>Id</u> at 256.

James has adequately set forth the first three elements of the <u>prima</u> <u>facie</u> case for retaliation. He engaged in protected activity in November 2001 when he filled out a complaint resolution form after receiving a letter of warning for being in the break room at an unscheduled time. This was an internal complaint resolution procedure, so ABX Air clearly knew of the protected activity. James also suffered an adverse employment action, namely, being terminated in April 2002. The dispute is whether there is a causal connection between James engaging in protected activity and the termination of his employment.

To prove a causal link, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken" but for the exercise of the protected activity. <u>Nguyen v. City of Cleveland</u>, 229 F.3d 559, 563 (6th Cir. 2000). While a causal link may be shown by knowledge

15

coupled with a temporal proximity, see Johnson v. University of Cincinnati, 215 F.3d 561, 582 (6th Cir. 2000), the existence of a causal connection must be made when looking at the totality of the circumstances.  No one factor is conclusive.  Weigel, 302 F.3d at 381.

The parties engage in significant debate about whether a causal connection exists between the November 2001 protected activity and James' termination.  The Court is inclined to find that James has not established a causal connection between his protected activity and his termination.  The incident in November 2001 involved supervisors on the second shift line maintenance division.  James' termination occurred while he was on the first shift in specialized training, with different supervisors.  While James' second shift supervisor, including a supervisor involved in the November 2001 incident, had to sign off on his termination, there is absolutely no allegation that these supervisors were involved in the initial decision to terminate James.  That decision was made by supervisors unrelated to James' second shift supervisors, and James has not produced any evidence proving that his second shift supervisors conferred a retaliatory motivation onto the first shift supervisor.  Additionally, James' termination occurred six months after he engaged in protected activity.  While no amount of time, however short or long, will absolutely foreclose or support a causal connection as a matter of law, six months is a

16

long time for an employer to wait to retaliate against an employee.

Assuming but not deciding that a causal connection exists and James has established a <u>prima</u> <u>facie</u> case of retaliation, James' retaliation claim ultimately fails because he us unable to show that ABX's legitimate, non-discriminatory reason for terminating him is pretextual.

As discussed above in regards to James' discrimination claim, the Sixth Circuit has made it clear that sleeping on the job is a legitimate, nondiscriminatory reason for terminating employment. James thus bears the burden of demonstrating that this proffered reason is pretext. He can do so in one of three ways - 1) demonstrating there is no basis in fact for the proffered reason; 2) proving that the proffered reason did not motivate the discharge; and 3) showing that the proffered reason was insufficient to motivate the discharge. <u>Kline</u>, 128 F.2d at 346. The ways in which to prove pretext for all three ways are laid out above in section A.

For many of the same reasons that doomed his disparate treatment claim, James cannot show that ABX's proffered reason for terminating him was pretextual. James admits that he did, in fact, sleep on the job, and thus there is a basis in fact for ABX's proffered reason for termination (docs. 33, 36). He also cannot show that the proffered reason was insufficient to motivate the discharge. Finally, James cannot demonstrate through indirect and

circumstantial evidence that ABX's proffered reason did not motivate his discharge. In contrast to his evidence presented in his discrimination claim, James here does not present any evidence, allegation, or argument at all to show that ABX's proffered reason for terminating him is pretextual. James must present additional evidence beyond that which would support a prima facie case in order to show pretext. Since this Court has found that James' prima facie case is doubtful at best, James has certainly failed to show that ABX's legitimate, non-discriminatory reason for terminating his employment is pretextual. Accordingly, summary judgment for ABX on James' retaliation claim is appropriate.

**C. James' Claim of Disability Discrimination Under Ohio R.C. § 4112.**

As an initial matter, the parties seem to dispute what James is alleging in this claim. ABX Air interprets this claim as a failure to accommodate claim, and directs the Court to the test for a prima facie case of failure to accommodate as set forth in Pflanz v. Cincinnati, 149 Ohio App.3d 743, 778 N.E.2d 1073 (Ohio App. 1 Dist. 2002). James' Motion in Opposition directs the Court to the standard for a disability discrimination claim as articulated in Hood v. Diamond Products, Inc. (1996), 74 Ohio St.3d 298, 658 N.E.2d 738. James' original Complaint could be construed as either a failure to accommodate claim or a disability discrimination claim (doc. 1). The Court finds that, based on his Motion in Opposition (doc. 36), James is alleging disability discrimination, not failure

18

to accommodate, and will thus analyze the claim under the <u>Hood</u> standard.

In order to establish a <u>prima facie</u> case of disability discrimination in violation of Ohio R.C. § 4112, the plaintiff must show "(1) that he or she was handicapped, (2) that an adverse employment action was taken by the employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." <u>Hood</u>, 74 Ohio St.3d at 302. A handicap or disability is defined in Ohio R.C. § 4112.01(A)(13) as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of physical or mental impairment; or being regarded as having a physical or mental impairment."

Whether a condition is a disability under Ohio R.C. § 4112.01(A)(13), thus satisfying the first element in the <u>Hood</u> test for disability discrimination, must be decided on a case by case basis. <u>Sanders v. FirstEnergy Corp.</u>, 157 Ohio App.3d 826, 813 N.E.2d 932 (Ohio App. 7 Dist. 2004); <u>Hood</u>, 74 Ohio St.3d at 303. The only Ohio court, so far as this Court can determine, to directly rule on the issue of whether sleep apnea constitutes a disability is the Ohio Seventh District Court of Appeals in

Sanders.  There, the plaintiff had been conclusively diagnosed with sleep apnea and had submitted an affidavit detailing his symptoms. He had "frequent awakenings at night including episodes of gasping and choking."  Sanders, 157 Ohio App.3d at 832-833.  He frequently became tired at work and had to take naps at lunch to make it through an eight hour day.  He fell asleep often in cars and while watching television, needed to roll down the windows while driving to stay awake, and needed to wear a mask hooked to a breathing machine at night.  Id. At 833  He once came home from work slurring his speech because of his extreme fatigue.  Id.  The court in Sanders described this evidence as "not overwhelming," but did find that it was sufficient to create a question for the jury as to whether the plaintiff was disabled or not.  Id.

Comparing James' evidence of his sleep apnea to the evidence presented by the plaintiff in Sanders, this Court concludes that James is not disabled, and thus cannot establish a prima facie case of disability discrimination.  The evidence of disability James has presented simply does not rise to the level of the evidence in Sanders, which the Seventh District acknowledged to be a close case.  James' diagnosis of sleep apnea was only a preliminary one, as he could not afford more conclusive testing after being terminated from ABX Air.  While this Court is certainly sympathetic to Mr. James' situation and hopes that he will be able to get treatment for this potential condition, the fact remains

20

that without a conclusive diagnosis of sleep apnea, Mr. James' case for disability discrimination is weakened. Furthermore, in his deposition testimony, James has admitted that he does not currently have any problems with daytime sleepiness and has had no problems staying awake at jobs he has held since he was terminated by ABX (doc. 33). James, when challenging his termination for sleeping, in fact downplays the extent of his sleeping on the job problem, characterizing the instances at issue as "nodding off" rather than "sleeping." James cannot now allege a full-blown disability. Given these facts, this Court cannot conclude that James is disabled within the meaning of Ohio R.C. § 4112.01(A)(13), as there is no major life activity that has been impaired.

Even if James' sleep apnea was considered a disability, James could not prove the second element of the prima facie case for disability discrimination, namely, that he suffered an adverse employment action at least in part because he was handicapped. While ABX did indeed terminate James for sleeping on the job, it is undisputed that ABX had no knowledge that James potentially suffered from sleep apnea. In the Sanders case, the defendant employer was fully aware that the plaintiff suffered from sleep apnea, and fired him because he suffered from that condition. Here, ABX terminated James because he slept on the job, not because he had sleep apnea. ABX could not terminate James because he had a disability if ABX did not know James had a disability. Even

James did not know he potentially suffered from sleep apnea until after his termination from ABX.  Thus, James cannot establish either the first or the second elements of the prima facie case for disability discrimination, and summary judgment for ABX is appropriate on James' disability discrimination claim.

Even if James' claim was for a failure to accommodate and was analyzed under the Plfanz test, it would still fail.  To establish a prima facie case of failure to accommodate, a plaintiff must show that 1) he/she was disabled; 2) their employer was aware of the disability; and 3) they were an otherwise qualified individual with a disability in that the plaintiff satisfied the prerequisites for the position and could perform the essential functions of the job with or without an accommodation.  Plfanz, 149 Ohio App.3d at 752.

As discussed above, this Court finds that Mr. James was not disabled within the meaning of Ohio R.C. § 4112.  As also discussed above, ABX Air was unaware that Mr. James had sleep apnea when ABX Air terminated him.  For these reasons, James has failed to establish a prima facie case of failure to accommodate, and summary judgment for ABX on a failure to accommodate claim would be appropriate.

**D. James' Violation of Public Policy Claim.**

Ohio law recognizes a claim for violation of public policy when "(1) a 'clear public policy existed and was manifested

22

in a state or federal constitution, statute or administrative regulation, or in the common law'; (2) in general, 'dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy'; (3) the 'plaintiff's dismissal was motivated by conduct related to the public policy'; and (4) the employer did not have justifiable 'legitimate business justification for the dismissal." Carrasco v. NOAMTC, Inc., 124 Fed.Appx. 297, 304 (6th Cir. 2004) (unpublished) (quoting Wiles v. Medina Auto Parts (2002), 96 Ohio St.3d 240, 773 N.E.2d 526, 529-530). For the second or "jeopardy" prong, an inquiry into whether adequate statutory remedies exist to vindicate the public policy at issue is dispositive. Id.

James' public policy claim is controlled by the Sixth Circuit's decision in Carrasco. There, the Sixth Circuit concluded that Title VII and Ohio R.C. § 4112 provided adequate remedies to vindicate Ohio's public policies against discrimination in the workplace and unlawful retaliation. Carrasco, 124 Fed.Appx. at 304; see e.g. Feichtner v. Roman Catholic Archdiocese of Cincinnati, 2006 WL 571962 (S.D. Ohio Mar. 7, 2006). Therefore, James' violation of Ohio public policy claim fails as a matter of law, and summary judgment for ABX is appropriate on this claim.

**E. James' Claim of Hostile Work Environment Under Title VII and Ohio R.C. § 4112.**

Title VII's broad prohibition against discrimination in the workplace reaches claims of hostile or abusive work

23

environments.  See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986).  To be actionable under Title VII, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).  Under this standard, the conduct at issue must be both objectively hostile or abusive to a reasonable person and must be subjectively hostile or abusive to the victim.  Id.  The conduct and workplace at issue need not result in serious injury or psychological damage to the victim to fall within Title VII's purview, however.  Id.  Concrete harm is not required - all that is required is that "the environment would reasonably be perceived, and is perceived, as hostile or abusive."  Id at 22.  Whether conduct or a workplace is hostile or abusive under the meaning of Title VII can only be determined by looking at the totality of the circumstances.  While factors such as frequency and severity will play important parts in the determination, no one factor is dispositive.  Id at 23.  The Ohio Supreme Court has held that case law interpreting Title VII is generally applicable when interpreting claims under Ohio R.C. § 4112, see Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission (1981), 66 Ohio St. 2d 192, 421 N.E.2d 128, and thus James' claims under Title VII and Ohio R.C. § 4112 for hostile work

environment will be analyzed together.

ABX Air initially moved for summary judgment on James' hostile work environment claim on the grounds that the conduct James alleged, even if true, was not severe or pervasive enough to establish a finding of a hostile work environment as a matter of law (doc. 33). James' Memorandum in Opposition did not discuss his hostile work environment claims or attempt to rebut ABX's allegations that the conduct he initially alleged did not amount to a hostile work environment (doc. 36). ABX interprets this as James abandoning his hostile work environment claim (doc. 39). This is incorrect. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or this Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991). Therefore, the Court must still determine whether ABX has met its burden under the Rules, and has demonstrated the absence of a genuine issue of material fact. See Celotex, 477 at 323.

Although it is a close case, this Court does not think that ABX Air has met this burden. ABX must identify the parts of the record that demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. ABX has attempted to do so by pointing out that Mr. James, in his deposition testimony, had only identified three incidents of harassment, all of which relate

25

to his interactions with supervisors (doc. 33). First, ABX states James alleges that his supervisors would watch him while he worked. Second, ABX says James alleges that he was confronted by multiple supervisors when being counseled. Third, ABX recounts the November 2001 incident between James and two supervisors over James' unscheduled break (Id.). ABX asserts that these three incidents, even if completely true, do not amount to harassment because James does not allege that the incidents had anything to do with race and were proper actions for supervisors to take (Id.). Thus, ABX says there is no genuine issue of material fact as to whether the actions of James' supervisors created a hostile work environment.

This Court does not agree. Examining the entire record before it, including James' deposition testimony (doc. 37), this Court does find that James alleges that all three incidents described above were based on race. James makes numerous allegations that his supervisors did not watch other white workers as closely as they watched him and did not counsel other white workers three or four at a time (Id.). Furthermore, there are other instances in the record of racial epithets being used and of racial harassment of African American workers (Id., doc. 36).

When reviewing a motion for summary judgment, this Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita, 475 U.S. at 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144

26

(1970); <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. <u>See</u> <u>Adams v. Metiva</u>, 31 F.3d 375, 378 (6th Cir. 1994). James' allegations, in light of other evidence in the record of racial harassment of African American workers by ABX Air and its employees, could easily allow a jury to infer that ABX's supervisors harassed Mr. James because of his race. Furthermore, it is up to a jury to decide whether to believe Mr. James' allegations or the testimony of ABX Air supervisors and employees, as this Court cannot weigh the credibility of witnesses.

Whether the actions of ABX Air and its supervisors were motivated by racial considerations is a point that is disputed by the parties. Thus, there is a genuine issue of fact. Whether racial considerations were the reason for the conduct is, furthermore, a central and material fact to James' allegations of hostile work environment due to racial harassment. Thus, there is a genuine issue of material fact. Furthermore, whether those actions rose to the level of actionable harassment under Title VII is also a question of material fact for a jury to determine in light of the totality of the circumstances. This Court finds that genuine issues of material fact remain as to James' hostile work environment claim, and thus summary judgment on this claim is inappropriate.

27

28

**CONCLUSION**

For the reasons detailed above, ABX Air's Motion for Summary Judgment (doc. 33) is GRANTED IN PART AND DENIED IN PART. James' claims of 1) disparate treatment race discrimination in violation of Title VII, 42 U.S. C. § 1981, and Ohio Revised Code § 4112; 2) retaliation in violation of Title VII and Ohio R.C. § 4112; 3) disability discrimination in violation of Ohio R.C. § 4112; and 4) violation of Ohio public policy are dismissed. However, James' claim of hostile work environment harassment in violation of Title VII and Ohio R.C. § 4112 remains.

SO ORDERED.

Dated: March 23, 2006          s/S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge

29